No. 21164.

ALBERT N. GREGERSON AND BEATRICE E. GREGERSON *v.*
FRANK E. WEATHERLY AND HELEN M. WEATHERLY.
(417 P.2d 769)

Decided August 29, 1966.

CLINTON M. COLE, PAUL V. EVANS, for plaintiffs in error.

TULLIS & CRAIG, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

THE plaintiffs in error will be referred to as the Gregersons, or defendants; the defendants in error will be referred to as the Weatherlys or plaintiffs.

The action involves a contract for exchange of real estate and personal property in El Paso county, Colorado, owned by the Gregersons, for real estate and personal property located in the State of Illinois, owned by the Weatherlys. The Colorado property (owned by Gregersons) consisted of facilities known as Pla-Mor Mobile Village in Colorado Springs. The Weatherlys looked at the "Village" and entered into talks with Gregersons concerning an exchange of properties. The Gregersons went to Illinois and inspected the property offered in trade by the Weatherlys, which consisted of a fraternity house in Urbana, Illinois, 20 acres of unimproved land, and 80 acres upon which a tenant house, garage, tool shed, corncrib, and fencing had been placed.

A written contract was entered into between the par-

ties, dated October 6, 1961. Under its terms a deed to the fraternity house and possession thereof was to be delivered by Weatherlys to Gregersons on November 1, 1961. Also on that date the deed from Gregersons conveying the Pla-Mor Mobile Village and possession thereof was to be delivered to Weatherlys. These conditions had been complied with prior to the commencement of the action. Possession of the Illinois farm property was not to be given until March 1, 1962, and was subject to the rights of the tenants. Weatherlys reserved the right to repurchase the farm land, at $400 per acre, for two years from the date of the contract. The Gregersons had taken possession of the fraternity house and had executed a new lease for the 1962-63 school year. The Weatherlys took possession of the Colorado property on November 1, 1961, and thereafter operated the business. The Gregersons had agreed to deliver title to a Dodge truck and a Willys jeep but at the time of trial had not done so. There was a deposit of $750 held by Weatherlys as a damage indemnity, under the terms of the lease, on the fraternity house, which had not been paid by Weatherlys to Gregersons as required by the contract. Contention arose between the parties and no final closing of the contract was ever had. No accounting had been made between them in the adjustment of taxes, insurance and income from crops, and some other matters also remained unsettled.

The plaintiffs brought the action for specific performance of the acts required of the Gregersons, which had not been performed by them. In addition thereto they sought damages for the failure of defendants to deliver title to the motor vehicles and for alleged fraud in the following particulars: shortage in represented acreage in land area in the Pla-Mor Mobile Village enclosure; representation that there were 175 trailer sites when in fact there were only 159 such sites; representation that only five sites were not connected with sewer facilities whereas there were actually eleven such sites;

representation that certain coin-operated laundry facilities were under no contract when in fact they were under a contract which would expire in 1964; and alleged representation that the amount of taxes for 1960 was $900 although in fact such taxes amounted to $1895.26. The plaintiffs tendered a deed to the 80 acres in Illinois.

The Gregersons by their answer denied all the facts upon which plaintiffs claimed damages, and affirmatively alleged that their contract was for the sale of a complete tract known as Pla-Mor Mobile Village and was never intended by the parties to be the sale of a certain number of acres; that plaintiffs personally inspected all the boundaries thereof and knew the exact area included therein; that the expression "approximately 13 acres known as Pla-Mor Village" used in the contract was used for the purpose of general identification only and that the legal description was to be added at a later time.

For counterclaim the defendants alleged that the Weatherlys falsely represented the value of the farm land, and misrepresented that the fraternity house was in good repair. They demanded a rescission of the whole contract and offered to return to the plaintiffs all moneys and property received by them under the contract. Defendants further alleged full performance by them of all things required, except those which were excused by the nonperformance of the plaintiffs, namely: the failure to deed the 80 acres; the failure to pay over $750 which was to go to the landlord with the lease on the fraternity house; and the failure to adjust taxes, insurance, and other incidentals as provided by the contract. In the alternative, defendants sought a reformation of their contract to correctly describe the real estate conveyed by them, and also to reform the deed, each of which had inadvertently included in the description of the property an area which was not owned by the defendants.

The issues were tried to the court and findings of fact and conclusions of law were entered on November 13, 1963. The trial court found that there had been no actionable fraud or misrepresentation on either side; that rescission of the contract as prayed for should be denied; that plaintiffs should be awarded damages in the amount of $100 for the failure of defendants to transfer title to the motor vehicles; that defendants should be awarded damages at the rate of $5 per acre per year for the time they were deprived of possession of the 80 acres; that reformation of the deed as prayed for by defendants should be had; that the plaintiffs account to the defendants for rentals received from the house on the 80-acre tract and for crops grown and harvested thereon since March 1962, less costs of planting and harvesting; that $750 plus interest thereon be paid by plaintiffs to defendants as landlords of the fraternity house; and that the taxes and insurance payments be adjusted as per specific direction with regard thereto.

The Gregersons are here on writ of error and seek reversal of the judgment which granted specific performance to the plaintiffs and denied the rescission prayed for by the counterclaim of defendants. There had been performance of a very substantial part of the contract by each of the parties.

In *Briggs v. Robinson*, 82 Colo. 1, 256 Pac. 639, we find the following pertinent language:

"* * * He insists, however, that a mere breach of contract does not justify the equitable relief of rescission and cites 9 C. J. p. 1181. Such seems to be the general rule but there are, of course, exceptions thereto. If an action at law will afford to the complaining party adequate and complete relief by way of damages, the equitable remedy is unnecessary. Exceptions to the general rule are recognized by the authorities cited by defendant. Where the facts produced at the trial clearly show that the injury caused by the breach of the contract in

one or more of its essential parts is irreparable; or where damages that might be awarded would be difficult or impossible to determine or inadequate, the injured party may resort to the equitable remedy."

The trial court having found that no fraudulent misrepresentation had been made by either of the parties, committed no error in refusing to rescind the contract on the ground that the Weatherlys had not fully performed. Admittedly, the Gregersons had not fully performed. The trial court properly assessed damages for the respective failures of the parties to perform.

In *California Sugar and White Pine Agency v. Penoyar*, 167 Cal. 274, 139 Pac. 671, it is said:

"* * * the rule [of rescission] does not go so far as to justify a party who is himself in default in rescinding upon the ground of a subsequent default by the other party. The rule is general that the right to rescind a contract rests only with the party who is without default. One party cannot violate the contract himself, and then seek a rescission on the ground that the other party has followed his example. * * *"

There is no merit to the contention made by the Gregersons that the title to the 80-acre tract was not merchantable. No competent evidence was introduced to establish a defective title.

The judgment is affirmed.

Mr. Justice Day and Mr. Justice Pringle concur.